**CLEVENGER AND WRIGHT COMPANY, Appellant-Plaintiff,**

v.

**A. O. SMITH HARVESTORE PRODUCTS, INC., Respondent-Defendant.**

**No. WD 31878.**

Missouri Court of Appeals, Western District.

Dec. 1, 1981.

Gary W. Collins, Kansas City, for appellant-plaintiff.

Thomas J. Wheatley and Michael W. Rhodes, Kansas City, for respondent-defendant.

Before SOMERVILLE, C. J., Presiding, and CLARK and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

This is an appeal from a summary judgment granted in favor of defendant-respondent A. O. Smith Harvestore Products, Inc., after motion and hearing, against plaintiff-appellant Clevenger and Wright Company. Appellant's cause of action was for damages sustained to its grain storage silo, which was manufactured by respondent and later destroyed by a tornado which struck on appellant's farm on May 4, 1977.

The judgment of the trial court is affirmed.

The following facts can be adduced from the pleadings, affidavits, exhibits and depositions on file.[1] The silo in question was originally purchased in 1968 by Gary and Larry Plummer from Salisbury Harvestore Systems, Inc., the retail dealer. Neither buyer nor seller were parties to this litigation. In 1972, appellant purchased the silo and other buildings as a part of its purchase of the Plummer's farm. The original purchase order contained a one year "sole warranty" for defects in parts or workmanship. All other warranties, express or implied, were disclaimed. Salisbury Harvestore Systems, Inc. sold the silos pursuant to a "Harvestore Dealer Sales and Service Agreement" with respondent. This "Agreement", as well as the purchase order, stated the dealer was an independent contractor of respondent, none of whose representations were binding on respondent.

█ Although there is contrary testimony from the parties concerning the strength of the tornado on May 4, an affidavit of Frederick P. Ostby, Acting Director of the National Severe Storms Forecast Center, provides evidence that the tornado in question touched down in northern Jackson County, moved northeastward into Clay County and on through Ray County, Missouri, damaging or destroying some 28 homes and leaving a path approximately 400 yards wide and 10 miles long. The National Weather Service records and Mr. Ostby's personal observations confirm that the wind velocity of the tornado approached 200 miles per hour, placing it in the top 2.5 percent of tornadoes reported in the continental United States since 1950.[2] Appellant's 20′ × 60′ silo was ripped from its concrete foundation and deposited some 400 yards away by the tornado. The silo was empty at the time of the tornado and was not insured.

As best can be gleaned from appellant's brief, appellant's pleading posited three theories of recovery—negligence, product's liability, and express warranty. In essence,

---

1. Respondent submitted affidavits, exhibits, depositions, and suggestions in support of its motion. Appellant responded only with suggestions in opposition to the motion, notwithstanding Rule 74.04(e) which provides that when a motion is made and supported as provided in the Rule, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavit or otherwise provided ... must set forth specific facts showing that there is genuine issue for trial ...."

2. On appeal, appellant asserts for the first time that Mr. Ostby's affidavit is not in compliance with Rule 74.04, as it is based not only upon his personal observations of the tornado, but also upon his business records, which are not attached as exhibits. These, appellant claims are hearsay. However, appellant never objected to the affidavit—by denial, counter-affidavit, at the hearing or in its most unique "Motion for New Trial". The facts in the affidavit are thus deemed admitted, and any objections were not properly preserved for review. *See Seliga Shoe Stores v. City of Maplewood*, 558 S.W.2d 328, 331 (Mo.App.1977).

appellant asserted that: (1) respondent failed to use ordinary care in not manufacturing a tornado-proof silo; (2) this silo was "defective" and "unreasonably dangerous"; and (3) there were warranties made that the silo was tornado-proof.[3]

■ "[R]eview of a summary judgment is a two-step analysis; first, whether there is genuine issue of material fact requiring trial, and, second, whether the prevailing party was entitled to judgment as a matter of law." *Kaufman v. Bormaster*, 599 S.W.2d 35 at 37 (Mo.App.1980). *See* Rule 74.04(c). Further, parties against whom the motion was granted must be accorded every favorable intendment of the record. *Thompson v. Parker*, 608 S.W.2d 415 (Mo. banc 1980).

In the present case, appellant relies almost entirely upon the answers given by its officers in depositions taken by respondent for support of its contention that the trial court erred in finding no genuine issues of material fact. Appellant claims that this testimony alone adequately shows that there is genuine issue as to: (1) the nature of what appellant refers to as "the wind" on May 4, 1977; (2) whether or not representations were made to appellant by the retail dealer's employees that the silo was "indestructible" and could withstand a tornado; and (3) whether or not similar representations were made in respondent's advertisements and seen by appellant both before and after its purchase of the farm.

Respondent's reply to appellant's contentions not only attempts to show how there is no genuine issue to the above claims, but further argues that, as a matter of law, damages are not recoverable upon any of the theories appellant sets out. Respondent's same contentions were before the trial court in its suggestions in support of

its motion. Because the trial court's grant of the motion did not specify its grounds, it is unclear what were the specific underlying reasons for that ruling. It is clear, however, that the trial court did not err in its ruling.

The trial court surely had sufficient information before it which indicated that there was not the "slightest doubt" that the wind of May 4, 1977 was in fact a sizeable tornado. *See Seliga Shoe Stores v. City of Maplewood, supra,* fn. 2. The affidavit testimony of the neutral witness Mr. Ostby as well as the deposition testimony of appellant's own officers bear this out. Further, regardless of what allegations appellant has made concerning representations and warranties, strict liability or negligence—the law is clear that there may not be recovery of damages on any of those theories in the instant case.

■ Appellant's first theory of recovery is express warranty and that the rights thereunder were assigned to it upon its purchase of the Plummer's farm. Appellant does not contest nor does this court find authority that would not put the sale of the silo to the Plummers under the Sale of Goods chapter to the U.C.C. *See* § 400.-2–105; *Pittsburgh-Des Moines Steel Co. v. Brookhaven Manor Water Co.*, 532 F.2d 572, 578–80 (7th Cir. 1976) (sale of one million gallon water tank governed by U.C.C.); *Steele v. Belmont Trailer Sales, Inc.*, 445 F.Supp. 53 (E.D.Mo.1977) (sale of mobile home governed by U.C.C.). First, the express disclaimer in the original purchase contract bars recovery on any express warranty claim.[4] Sections 400.2–316(4) and 400.2–719, RSMo 1978. Moreover, the statute of limitations concerning sales of goods is four years after "tender of delivery is made." Section 400.2–725, RSMo 1978.

---

**3.** Although appellant's brief also mentions "misrepresentation" as a theory of recovery, its pleadings and brief only allege "warranties and representations" within the context of express warranty. Neither the pleadings nor the brief provide this court with any more than a mere mention of the tort cause of action. Thus, that theory will be considered as part and parcel of the express warranty claim.

Appellant's "Argument", as well as its "Statement of Facts" and "Points Relied On", tread the limits of compliance with Rule 84.04, as no direct authority is cited for any of appellant's theories of recovery or its conclusory allegations of error.

**4.** There was no claim here based on the implied warranty of merchantability or fitness. § 400.-2–314, RSMo. 1978.

The only exception is for warranties which explicitly extend to future performance, which is not the case here. *See, Binkley Co. v. Teledyne Mid-American Corp.*, 333 F.Supp. 1183 (E.D.Mo.1971), *aff'd*, 460 F.2d 276 (8th Cir. 1972) (applying Missouri law). Because appellant claims the benefit of the alleged assigned rights of the Plummer's original purchase contract, it is also subject to the defenses applicable to the Plummers. *Centennial State Bank v. S.E.K. Construction Co. Inc.*, 518 S.W.2d 143, 147 (Mo.App. 1977). Thus, the statute of limitations which would bar any warranty action by the Plummers, also bars any action by appellant on its claim, as it comes some nine years after the original purchase. *See Steele v. Belmont Trailer Sales, Inc., supra.*

■ Appellant's theory of negligence is multi-faceted: negligence in manufacture, design, advertising, failure to adequately test and failure to warn. Essentially, appellant asks this court to rule that a manufacturer has a duty of ordinary care to produce a "tornado-proof" silo. Respondent cites to *Crowder v. Vandendeale*, 564 S.W.2d 879, 881 (Mo. banc 1978), for its holding that recovery for defective construction of a home against the builder of the home is limited to warranty theory, and that even that recovery should be limited to the first purchases of the home. Important, however, was the court's general language limiting recovery in tort for pure economic damages to cases where there has been "personal injury, or property damage either to property other than the property sold, or to the property sold when it was rendered useless by some violent occurrence." *Id.* at 881. This language is equally applicable to the case at bar and serves to bar any recovery based on tort in this case. While there may have been a "violent occurrence" in the present case, *i.e.* the tornado, that term should be reserved for occurrences caused by internal defects or situations similar to § 402A "unreasonably dangerous" products rather than *vis major. See Gibson v. Reliable Chevrolet, Inc.*, 608 S.W.2d 471 (Mo.App.1980).

■ Appellant's resort to products liability as a source of recovery is also misplaced. Although it cites to Restatement (Second) of Torts § 402A, it ignores the fact that the basis of § 402A is that the product must be "defective and unreasonably dangerous", and that the damages recoverable are limited to personal injury or to property other than the property sold. *See Gibson v. Reliable Chevrolet, Inc., supra.* Strict liability in tort is simply not the appropriate remedy for the economic and consequential damages appellant claims here. *Crowder v. Vandendeale, supra.*

The cases cited make it clear that appellant cannot recover damages here under strict liability or negligence but is constrained to contract law. Since recovery on warranty is not possible here, the trial court's actions in granting the summary judgment here were not erroneous.